## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JOAN RITCHIE SILLECK, THE ESTATE OF RICHARD JAMES RITCHIE, and ROBERT RITCHIE, | : : : : : | |
| Declaratory Judgment Plaintiffs, | : : | 12-CV-3556 (JMF) |
| v. | : : : | |
| | : : : : : | MEMORANDUM OF LAW OF DEFENDANT PEPSICO, INC. IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT |
| PEPSICO, INC., | : : | |
| Declaratory Judgment Defendant. | : : | |

Dechert LLP

Robert A. Cohen
Joshua I. Sherman
1095 Avenue of the Americas
New York, NY 10036-6797
(212) 698-3500 (Tel.)
(212) 698-3599 (Fax)
robert.cohen@dechert.com
joshua.sherman@dechert.com

Martin J. Black
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000 (Tel.)
(215) 994-2222 (Fax)
martin.black@dechert.com

*Counsel for Pepsico, Inc.*

# TABLE OF CONTENTS

**Page**

I.      FACTUAL BACKGROUND ........................................................................................ 1

II.     STANDARD OF REVIEW ......................................................................................... 3

III.    ARGUMENT .............................................................................................................. 4

      A.   The 1951 Agreement Is Binding On The Heirs Under Well-Established Rules Of Contract Law ........................................................................................ 5

      B.   The Heirs Are Bound To Confidentiality Under Common Law Principles .......... 8

      C.   The Confidentiality Obligations That Bind Plaintiffs Preclude Recovery Under Any Of The Counts .................................................................................. 10

IV.     CONCLUSION .......................................................................................................... 11

## TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................................3

*Brearton v. DeWitt*,
  170 N.E. 119 (N.Y. 1930).............................................................................................................7

*Dow Jones & Co., Inc. v. Harrods Ltd.*,
  346 F.3d 357 (2d Cir. 2003)........................................................................................................10

*Gura v. Herman*,
  227 A.D. 452 (N.Y. App. Div. 1929) .......................................................................................5, 6

*Int'l Audiotext Network, Inc. v. AT&T*,
  62 F.3d 69 (2d Cir. 1995).............................................................................................................4

*Kernochan v. Murray*,
  18 N.E. 868 (N.Y. 1888).........................................................................................................5, 6

*Kravetz v. McNutt*,
  133 N.Y.S.2d 301 (N.Y. Sup. Ct. 1954) .....................................................................................9

*Plumbers and Pipefitters Local Union No. 630 Pension – Annuity Trust Fund v. Arbitron Inc.*,
  741 F. Supp. 2d 474 (S.D.N.Y. 2010)..........................................................................................3

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)...........................................................................................................3

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*,
  75 F.3d 801 (2d Cir. 1996)...........................................................................................................3

*St. John's Univ. v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) .........................................................................................9

*Steinbeck v. Steinbeck Heritage Found.*,
  400 Fed. Appx. 572 (2d Cir. 2010).........................................................................................5, 7

*Terrydale Liquidating Trust v. Barness*,
  611 F. Supp. 1006 (S.D.N.Y. 1984)............................................................................................9

*TPS Freight Distribs., Inc. v. Tex. Commerce Bank-Dallas*,
    788 S.W.2d 456 (Tex. App. 1990)..................................................................................................7

**STATUTES**

28 U.S.C. § 2201(a) .................................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 3

*Restatement (First) of Restitution* § 201(2) (1937)................................................................8, 9

*Restatement (Third) of Restitution and Unjust Enrichment* § 43(c) (2011)...................................8

More than 25 years after the death of Richard J. Ritchie ("Ritchie"), a Pepsi formulator

who was under a confidentiality agreement with Pepsico, Inc. ("Pepsi"), the heirs of Ritchie

("Plaintiffs" or "Heirs") have brought a declaratory judgment action seeking the right to disclose

confidential documents they inherited when he died.  Ritchie signed a contract promising

unequivocally for all time that he would not disclose the confidential information of Pepsi, and

today, decades after his formulation work and his death, Ritchie's heirs seek to do what Ritchie

himself could not – sell the information to a third party.  The law, however, allows no such thing.

Ritchie's heirs are bound by the same confidentiality obligations that bound Ritchie.  Because

the relevant agreement and the law are unambiguous, this case cannot proceed, and the Court

should dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6).

## I.    FACTUAL BACKGROUND

For the purposes of the present motion only, Pepsi accepts the following factual

allegations of the Amended Complaint.

Richard John Ritchie ("Ritchie") was involved in the development of the formula for

Pepsi in and around 1931 ("1931 Pepsi Formula," or what Plaintiffs refer to as the "Ritchie

Invention").  Amended Complaint at ¶ 18.  Pepsi subsequently used the 1931 Pepsi Formula in

the production of its products.  *Id.*  Between 1931 and 1941, Ritchie maintained the 1931 Pepsi

Formula as confidential formulation information involved in the production of Pepsi's products.

*Id.* at ¶ 25.

In 1941, Walter Mack, President of Pepsi, asked Ritchie to record the 1931 Pepsi

Formula on a document (the "1941 Document") and store that document in a secure bank vault.

*Id.* at ¶¶ 26-28.  The 1941 Document describes and is coextensive with the 1931 Pepsi Formula.

*Id.*  After 1941, Ritchie continued to maintain the 1931 Pepsi Formula and the 1941 Document as

confidential formulation information involved in the production of Pepsi's products.  *Id.* at ¶ 42.

In March 1951, Pepsi and Ritchie entered into an agreement.  Amended Complaint, Exh. A ("1951 Agreement").  The 1951 Agreement sets forth provisions for the continued employment of Ritchie by Pepsi for a limited time thereafter.  *Id.* at p. 1 (second "WHEREAS" clause) & ¶ 3.

The 1951 Agreement reflects the intention of the parties to place clear obligations on Ritchie to maintain the confidentiality of Pepsi formulation information.  Under the 1951 Agreement, Ritchie's confidentiality obligations were defined as follows:

> 6.  Ritchie agrees that he shall at no time during his employment by The Company, or subsequent thereto, voluntarily disclose to any person other than the Board of Directors of The Company, or upon the written order of said Board, any information relating to The Company's plants, manufacturing methods, processes, formulae involved in the production of The Company's products or The Company's trade secrets.

1951 Agreement at ¶ 6.

At the time of the 1951 Agreement, Ritchie had possession of Pepsi's confidential formulation information, including the 1931 Pepsi Formula and the 1941 Document.  Amended Complaint at ¶¶ 18, 25-27, 29.  Pursuant to the plain language of paragraph 6 of the 1951 Agreement, Ritchie promised not to disclose that confidential formulation information "during his employment by The Company, or subsequent thereto."  1951 Agreement at ¶ 6.  Until his death in 1985, Ritchie honored his non-disclosure obligation with respect to the 1931 Pepsi Formula and the 1941 Document.  Amended Complaint at ¶ 42.  The formulation for Pepsi-Cola has been modified several times over the eighty-one years since the 1931 Pepsi Formula was developed, so that Pepsi is no longer actually using the cola formula contained in the Ritchie Documents.  *Id.* at ¶ 86.

The 1951 Agreement provides that the "agreement shall enure to the benefit of the heirs, representatives, successors and assigns of the parties hereto."  1951 Agreement at ¶ 10.  The

1951 Agreement also bound Pepsi to make certain payments to Ritchie's widow or estate upon his death. *Id.* at ¶ 5.

Plaintiffs are in possession of a copy of the 1941 Document and other documents containing confidential Pepsi information. Amended Complaint at ¶¶ 30, 51, 63. Pepsi has made known to Plaintiffs its claim that the disputed documents contain confidential formulation information and demanded their return. *Id.* at ¶ 5. Plaintiffs have refused to return the documents to Pepsi and have threatened to disclose them publicly and to commercially exploit them for their own financial gain. *Id.* at Prayer For Relief (¶ F).

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotations omitted). While the Court must generally accept factual allegations as true in deciding a Rule 12(b)(6) motion, conclusions are not facts and therefore "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Plumbers and Pipefitters Local Union No. 630 Pension – Annuity Trust Fund v. Arbitron Inc.*, 741 F. Supp. 2d 474, 478 (S.D.N.Y. 2010) (quoting *Iqbal*, 556 U.S. at 678) (dismissing control person claim).

In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75

3

F.3d 801, 808 (2d Cir. 1996). *See also Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d

Cir. 1995).

## III.   ARGUMENT

This motion presents a single legal issue: Does the confidentiality obligation of the 1951

Agreement bind Ritchie's heirs or are they free to disclose confidential information they

inherited from Ritchie?  Basic principles of contract law and fundamental fairness dictate that

confidentiality obligations are binding on heirs, and the Ritchie family has no right to disclose

the materials.

The Amended Complaint is replete with irrelevancies and assertions made on information

and belief, but there are four dispositive facts on which the parties agree, and the rest is

surplusage:

(1)   Ritchie had possession of confidential formulation information relating to Pepsi;

(2)   The formulation information was governed by the 1951 Agreement;

(3)   Ritchie promised not to disclose the formulation information during the term of the agreement or subsequent thereto; and

(4)   The heirs are now in possession of that information and are aware of Pepsi's assertion of confidentiality.

*See* Section I, *infra*.  *See also*, *e.g.*, Amended Complaint at ¶¶ 26-30, 41, 51, 61, 63.

On these facts, the Amended Complaint fails to state a viable cause of action.  All four

counts of the Amended Complaint are premised on the assumption that the Heirs have the right

to do what they wish with the 1941 Document and related materials, free and clear of any

obligations of Ritchie; however, there is no legal support for the Heirs' attempt to abrogate the

obligations of the family patriarch.  Once the Court concludes that Ritchie's confidentiality

obligations are binding upon the Heirs, all four counts of the Amended Complaint fail as a matter

of law.

### A.     The 1951 Agreement Is Binding On The Heirs Under Well-Established Rules Of Contract Law

As Plaintiffs admit in their Amended Complaint, Ritchie's 1951 Agreement with Pepsi contained an express non-disclosure obligation, forbidding Ritchie from "voluntarily disclos[ing] to any person other than the Board of Directors of The Company…any information relating to The Company's plants, manufacturing methods, processes, formulae involved in the production of The Company's products or The Company's trade secrets."  1951 Agreement at ¶ 6.  Plaintiffs admit, as they must, that Ritchie's non-disclosure obligations are directed to both the 1931 Pepsi Formula and the 1941 Document that sets forth what they call the "Ritchie Invention."  Amended Complaint at ¶¶ 25-27, 41.  This non-disclosure obligation bound Ritchie not simply during the pendency of his consultancy with Pepsi, but extended "subsequent thereto." *Id.*   In exchange for this commitment, Ritchie received a consulting agreement with the company and a promise to pay an annuity to his widow or estate upon his death.

Plaintiffs assert that Ritchie's confidentiality obligations are not binding on them and that confidentiality obligations die with a decedent.  They claim that those in privity with a decedent are free to use confidential information obtained by reviewing the decedent's personal effects. Plaintiffs are unable to cite any authority for this remarkable proposition because there is none.

It is a basic principle of contract law that absent express words to the contrary, contracts are binding upon the contracting parties' heirs and assigns.  *See Gura v. Herman*, 227 A.D. 452, 454 (N.Y. App. Div. 1929) ("It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but their personal representatives."); *Kernochan v. Murray*, 18 N.E. 868, 869 (N.Y. 1888) (same).  *See also Steinbeck v. Steinbeck Heritage Found.*, 400 Fed. Appx. 572, 578 (2d Cir. 2010) (not precedential) (citing *Gura* as

5

"New York's general rule").  Accordingly, Plaintiffs bear the burden of identifying the express

language evidencing a contrary intention.

Plaintiffs have asserted that Paragraph 10 of the 1951 Agreement supports their position.

The provision reads in its entirety:

> This agreement shall enure to the benefit of the heirs, representatives,
> successors and assigns of the parties hereto.

1951 Agreement at ¶ 10.

Plaintiffs assert that the provision indicates an express intention to allow Ritchie's Heirs

to disclose confidential Pepsi formulation information.  In other words, if Ritchie had died in

April 1951, a few weeks after he signed the 1951 Agreement, his heirs could have disclosed the

formula that very day, even while collecting payments under Section 5 of the 1951 Agreement

for the next three years.  This interpretation of the Agreement is untenable and could not possibly

have been intended by the parties.  A contract construction which would lead to an unfair result

upon death will be rejected.  *See Kernochan*, 18 N.E. at 868 ("Any other construction would

subject the purchaser to the risk of losing the benefit of the guaranty on the death of the

guarantors, which might happen at any time.").   The boilerplate language of Paragraph 10 is

hardly sufficient to meet Plaintiffs' burden of establishing that the parties sought to depart from

the presumption that contracts are binding on heirs.

In addition to arguing that there are "express words" that negate the well-settled New

York rule that contractual obligations generally survive death, it is expected that Plaintiffs will

also argue that the general rule does not apply because the 1951 Agreement was a personal

services contract.  It is indeed true that there is a "personal services" exception to the general rule

of survivability of contractual obligations.  *See Gura*, 227 A.D. at 454 ("Executory contracts are

not terminated by the death of a party unless the contract is personal in its nature.").  The reason

6

for the rule is that it would make no sense, and parties would not bargain for, the provision of

personal services by an heir.  For instance, if Pavarotti had signed a contract to sing at the

Metropolitan Opera before his death, no one would have expected his spouse or heirs to perform

in his stead.  It is an implicit condition of personal services contracts that the identity of the party

performing the task is material.  That is not the case here.  A contract may impose non-personal

obligations in addition to obligations involving special skill, and these non-personal obligations

will survive the death of the obligor.  *See Brearton v. De Witt*, 170 N.E. 119, 121 (N.Y. 1930)

("Performance of the acts called for by such [personal service] contracts may end with the life of

the promisor, but his other obligations may continue and survive his death.").  For instance, the

Second Circuit in *Steinbeck* distinguished between the potentially personal nature of the

authority to manage copyrights and the non-personal nature of the authority to terminate a

literary agent: "[T]he power at issue is the authority to terminate a literary agent, not [decedent's]

overall authority to manage the copyrights.  We are not persuaded that the exercise of ***that***

authority required extraordinary skills possessed uniquely by [decedent]."  400 Fed. Appx. at 579

(emphasis in original).

Here, the confidentiality obligation imposed by Paragraph 6 is not personal in nature.

There is no special skill or knowledge required to fulfill the obligations of a non-disclosure

provision, and thus there is no justification for concluding that the non-disclosure obligations

ended upon Ritchie's death.  *Cf. TPS Freight Distribs., Inc. v. Tex. Commerce Bank-Dallas*, 788

S.W.2d 456, 458 (Tex. App. 1990) ("[The obligor's] only obligation was to refrain from doing;

he had no affirmative burden to perform.  Upon his death, his heirs were likewise bound to honor

the non-compete provision.").  Because Ritchie's death did not render the ability to honor the

non-disclosure obligations impossible, the general rule of contractual survivability applies to those obligations.

Indeed, any other rule would wreak havoc on the settled expectations of parties to confidentiality agreements.  Upon death, heirs could take confidential third party information and disclose it to the world, or as in this case, seek to profit by selling the information to the highest bidder.  The public policy implications of such a rule are serious, and allowing the Heirs to pursue a claim under this theory would constitute a dramatic change in the law and an affront to common sense.

**B.      The Heirs Are Bound To Confidentiality Under Common Law Principles**

In addition to the contractual obligations of the Heirs, there are basic protections in the law which prevent third parties from profiting when they obtain confidential information even through no fault of their own.  While the Heirs here are bound by contract, even if they were complete strangers to the 1951 Agreement who had found the documents in dispute lying in the street, the Heirs would still owe a duty to Pepsi not to disclose the information.  Principles of unjust enrichment and quasi-contract would prevent them from using the confidential information.

The common law has long-recognized that when a third party acquires confidential information from one with a fiduciary duty not to disclose such information, the third party bears an independent obligation to refrain from use of the information.  *See Restatement (First) of Restitution* § 201(2) (1937) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *Restatement (Third) of Restitution and Unjust Enrichment* § 43(c) (2011) ("A person who obtains a benefit…in consequence of another's

8

breach of such a [fiduciary or equivalent] duty, is liable in restitution to the person to whom the duty is owed."). New York courts follow the Restatement position. *See*, *e.g.*, *Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006, 1031 (S.D.N.Y. 1984) (citing *Restatement (First) of Restitution* § 201); *Kravetz v. McNutt*, 133 N.Y.S.2d 301, 307 (N.Y. Sup. Ct. 1954) (citing to *Restatement (First) of Restitution* § 201). The principle is closely related to the doctrine of unjust enrichment, which provides for relief where (1) the defendant is enriched, (2) at the plaintiff's expense, and (3) equity and good conscience require restitution. *See St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 182 (E.D.N.Y. 2010) (applying unjust enrichment to appropriation of patentable idea).

Ritchie had a fiduciary duty not to disclose formulation information to third parties but nevertheless left the information in his personal effects upon his death. The Heirs are on notice of Pepsi's claim and like any third party, the Heirs are bound to respect the confidentiality obligation. Should they disclose or use the confidential Ritchie Documents or the 1931 Pepsi Formula, the three elements of unjust enrichment would be met. Plaintiffs would be enriched at the expense of Pepsi and equity and good conscience would require restitution. The Plaintiffs cannot benefit from information they obtained through inheritance any more than if they found the documents accidentally. The law will not sanction the nullification of confidentiality obligations upon death and outrageous "gotcha" claims by heirs who seek to profit by breaching their father's commitments. Plaintiffs are not entitled to a declaration that they are free to sell, disclose, or otherwise commercially exploit the documents at issue without accounting to Pepsi.

9

### C.    The Confidentiality Obligations That Bind Plaintiffs Preclude Recovery Under Any Of The Counts

All four counts of the Amended Complaint are premised upon the assumption that the Heirs are free to do what they wish with the formulation information.  Because that assumption is incorrect as a matter of law, the Court should dismiss the Amended Complaint.

While Plaintiffs phrase Count I of the Amended Complaint as a claim for a declaratory judgment regarding "Unrestricted Ownership of the Ritchie Documents," the true nature of Plaintiffs' claim is recited in their Prayer for Relief, where they ask the Court to declare "that Plaintiffs may freely disclose, transfer ownership and/or possession, or otherwise commercially exploit the Ritchie Documents."  *See* Amended Complaint at Prayer For Relief (¶ F).  Thus, Ritchie's heirs do not simply seek a declaration that they "own" the Ritchie Documents; rather, they seek a declaration that they own the Ritchie Documents free and clear of any confidentiality or non-disclosure obligations.  Because Plaintiffs are unable to disclose, use, or otherwise commercially exploit the Ritchie Documents, the Court should dismiss Count I.[1]

With respect to Plaintiffs' declaratory judgment claims regarding alleged ownership of the 1931 Pepsi Formula and the trade secret status of the Ritchie Documents, those declaratory

---

[1] To the extent that Plaintiffs solely request a declaration of ownership of the Ritchie Documents or the 1931 Pepsi Formula, such a request seeks an advisory opinion and this Court should exercise its broad discretion and deny jurisdiction under the Declaratory Judgment Act.  *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted th[e] permissive language [of 28 U.S.C. § 2201(a)] as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.").  The essence of the controversy between the parties is Plaintiffs' desire to "freely disclose, transfer ownership and/or possession, or otherwise commercially exploit the Ritchie Documents," Amended Complaint at Prayer For Relief (¶ F), and the Court's resolution of only abstract concepts of ownership are irrelevant to the true controversy between the parties.  *Id.* (in exercising this broad discretion to deny declaratory judgment jurisdiction, considering, *inter alia*, "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and "whether a judgment would finalize the controversy and offer relief from uncertainty").

judgment counts (II and III) cannot survive a motion to dismiss.  Any issues associated with intellectual property rights in the confidential formulation information are simply irrelevant in view of the overriding obligation on the Heirs to maintain the 1941 Document, and the 1931 Pepsi Formula as confidential.  Once the Court properly concludes that Ritchie's heirs must maintain the 1931 Pepsi Formula in confidence, any opinion the Court would reach regarding ownership or trade secret status of the 1931 Pepsi Formula would be an impermissible advisory opinion under the Declaratory Judgment Act.

Finally, Count IV vaguely asserts that Pepsi has somehow interfered with Plaintiffs' rights by simply demanding that they maintain the confidentiality of the documents.  There is no legal support for such a claim.   In order to ground this request for relief in some semblance of legal doctrine, Plaintiffs argue that "Pepsi has unjustifiably and improperly interfered with the Heirs' rights to disclose, transfer or otherwise exploit" the 1931 Pepsi Formula and the Ritchie Documents.  As explained above, however, the Heirs have no right to "disclose, transfer or otherwise exploit" the 1931 Pepsi Formula and the Ritchie Documents in a manner inconsistent with their confidentiality obligations.  Thus, there is simply nothing "unjustified" and "improper" regarding Pepsi's desire to enforce the clear confidentiality obligations.  Moreover, there are no facts asserted which would support the claim.  All the Amended Complaint pleads is that Pepsi advised the Heirs that they had no right to disclose the materials to third parties.  That hardly states a claim for relief.

IV.    CONCLUSION

Plaintiffs are not entitled to the declaratory relief they seek – a declaration of ownership so that they can use, disclose, or otherwise commercially exploit the 1931 Pepsi Formula and Ritchie Documents.  As such, this Court should dismiss the Amended Complaint with prejudice.

Dated: October 26, 2012

Respectfully submitted,

*/s/ Martin J. Black*
Martin J. Black

Robert A. Cohen
Joshua I. Sherman
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
(212) 698-3500 (Tel.)
(212) 698-3599 (Fax)
robert.cohen@dechert.com
joshua.sherman@dechert.com

Martin J. Black
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000 (Tel.)
(215) 994-2222 (Fax)
martin.black@dechert.com

*Counsel for Pepsico, Inc.*